IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

*FILED*

*OCT 06 2000*

*G. PATRICK MURPHY*
*SOUTHERN DISTRICT JUDGE*
*EAST ST. LOUIS, ILLINOIS DISTRICT OF ILLINOIS*

| | | |
|---|---|---|
| PAUL MOCABY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 99-0215-GPM |
| | ) | |
| KASKASKIA COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This matter is before the Court on Defendant's motion for summary judgment (Doc. 49) and Defendant's motion to strike unsworn declarations submitted by Plaintiff in support of Plaintiff's statement of material facts (Doc. 57). The Court held a hearing on both motions on Monday, September 25, 2000, and took the motions under advisement. For the following reasons, Defendant's motion for summary judgment is granted, and Defendant's motion to strike is denied.

## I. BACKGROUND

The following facts are undisputed for purposes of this motion for summary judgment. (*See* Doc. 53). Plaintiff, Paul Mocaby, was first employed by Kaskaskia College on or about December 8, 1981. At the time of his employment, he was 45 years old. Plaintiff's first application to Kaskaskia College was for the position of welding instructor. He was interviewed by Ruth Stahl, who was at that time Dean of Instruction, and Mike Cremeens, who was at that time Director of the Centralia Correctional Center Educational Program. At the time of this initial interview and at all times relevant, Plaintiff had a prosthesis on his right arm, extending from the elbow. Stahl and

67

Cremeens recommended that Mocaby be hired for the position of welding instructor for Kaskaskia College at the Centralia Correctional Center site.

Both Mocaby and Cremeens worked at the Centralia Correctional Center site pursuant to contracts between Kaskaskia College and the Illinois Department of Corrections School District 428. (*See* Exhibits 7, 8, and 9 to Defendant's motion for summary judgment). In the late 1980's or early 1990's, the Department of Corrections' Assistant Superintendent, Glenn Donaldson, verbally advised Cremeens that the Department of Corrections would be discontinuing all welding programs at prison facilities. At the time this decision was made, Kaskaskia College employed two welding instructors at its Centralia Correctional Center site, Mocaby and Clinton Jackson. Fortunately for employees of the site, the Centralia Correctional Center site was one of the last prison welding programs to be eliminated by the Department of Corrections.

The parties agree that Cremeens advised both Mocaby and Jackson of the possibility that this program would be discontinued in the future and that there was a possibility they may no longer have a position should the program be eliminated. Clinton Jackson, who is a non-disabled individual, remained a welding instructor until the program was discontinued. After being verbally advised of the fade out of welding programs at correctional centers, Cremeens discussed with Mocaby the possibility of starting an industrial maintenance technology program. In 1993-1994, a program entitled "Industrial Maintenance Technology" was instituted by Kaskaskia College for its Centralia Correctional Center Educational Program. Cremeens also arranged for Mocaby to meet with individuals from Southeastern Illinois Community College to collaborate on a curriculum for this program.

In 1993, Mocaby applied for a campus position at the business service center. In that

position, he would have worked with local industries setting up training programs. He was not hired for that position. Two years later, on April 5, 1995, Mocaby applied for an opening on campus as an industrial technology instructor. At that time, Mocaby was serving as the industrial maintenance technology instructor at the Centralia Correctional Center (he worked for Kaskaskia College at the Centralia Correctional Center as the industrial maintenance technology instructor until 1996-1997, when the program was discontinued).[1] Again, he was not hired for the on-campus position.

The parties agree that Mike Cremeens did not discourage the discontinuation of the industrial maintenance technology program and that Ava Rawlings, the Assistant Director of the Centralia Correctional Center program, played no part in the decision to discontinue the program. After the industrial maintenance technology program was eliminated, it was determined by the Department of Corrections that a custodial program (janitor training) would be an appropriate program for a penal institution environment. Cremeens consulted with Mocaby regarding the implementation of the custodial program in late 1996 or early 1997.

During this period of time, Mocaby had been teaching mathematics classes at the Correctional Center facility as part of an overload. The exact dates during which Mocaby taught these courses is not clear from the record. Nonetheless, the parties agree that during the spring semester of 1998, Mocaby was advised by Ava Rawlings that he would no longer be eligible to teach any mathematics overload courses. The decision that Mocaby was no longer eligible was made by Dr. Janet Gardner, Dean of Instruction. Overload classes are not a part of an instructor's teaching

---

[1] The program was discontinued because Centralia Correctional Center hired a new warden who determined that the program required machinery and equipment that was conducive to inmates manufacturing weapons. Because of the zero tolerance policy instituted on such materials, both this program, auto mechanics, and auto body were discontinued.

assignments and are assigned on a semester basis to employees after teaching assignments are determined. Not all courses taught as an "overload" are available on a continuing basis, as the need for the course is dependent upon enrollment, instruction, and ability. The parties agree that Rawlings told Mocaby he could no longer teach the overload math classes because he lacked a master's degree (Mocaby does hold a bachelor's degree from Southern Illinois University).

Mocaby was replaced in the position of basic math instructor by Mike Hoyt. The parties agree that Hoyt, who was an elementary school teacher, does not have a master's degree. The parties also agree that Mocaby had taught basic and technical math as overload classes at the Correctional Center and had developed a technical math course offered by Kaskaskia College. On or about September 23, 1998, Mocaby filed a grievance pursuant to the Collective Bargaining Agreement Grievance Procedures regarding the determination that he was not qualified to teach mathematics overload courses. The grievance was denied on October 7, 1998. (*See* Exhibit 14 to Defendant's motion for summary judgment).

In 1998, Mocaby applied for a welding instructor position available on campus at Kaskaskia College. His application was submitted to Paul Rehberg. Paul Rehberg, who had been Associate Dean of Workforce Education for Kaskaskia College since 1997, questioned whether Mocaby could teach welding because of his prosthesis. The parties stipulate that Mocaby did not have certification by the American Welding Society ("AWS") at that time. According to Rehberg, because Mocaby lacked current AWS certification, he was not qualified for the position of welding instructor. The parties also agree that Kevin Ray, the person hired to fill the position of welding instructor in 1998, had no classroom experience in welding instruction but had simply shown people how to weld on the job during previous employment. Ray did not have a college degree.

4

Mocaby also claims he should have been appointed to another campus position in 1998 as electronics instructor, but it is undisputed that he never applied for the position. That position was awarded to Rich Dalman, who was an instructor in electronics at Centralia Correctional Center at the time he was hired for the on-campus job. Dalman had less seniority than Mocaby at the time he was selected to transfer to the on-campus position.

On or about August 20, 1998, Mocaby filed a grievance regarding his non-selection for the position of welding instructor. The grievance was denied on August 31, 1998. Mocaby then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 23, 1998, alleging he had been discriminated against and harassed on the basis of his age and an actual or perceived disability. Mocaby resigned his position with Kaskaskia College on May 5, 1999, stating that he would end his employment effective May 21, 1999, "due to circumstances that have evolved over the past few years, and with the expectation that circumstances will not change." On April 15, 1999, Mocaby applied for a position as code enforcement officer with the City of Centralia, and he was hired for this position on May 3, 1999. He is currently earning $28,980[2] annually in that position. (Doc. 53, para. 53).

Mocaby filed another charge with the EEOC on June 18, 1999, alleging that retaliatory actions by Kaskaskia College for the filing of the October 23, 1998, charge resulted in his constructive discharge. The EEOC issued a "right to sue" letter on December 31, 1998, and the instant action was filed in this Court on March 24, 1999 (Doc. 1), alleging employment discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et*

---

[2] The parties' joint statement of uncontested facts (Doc. 53) states that Mocaby's base salary was increased to $28,9880 effective January 1, 2000. The Court interprets this as a typographical error and assumes that the correct amount should be $28,980.

*seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.* An amended complaint was filed on August 19, 1999 (Doc. 20), and by Order dated March 14, 2000, Plaintiff was granted leave to file a second amended complaint to add claims for retaliation and constructive discharge (Doc. 27). Defendant moved for summary judgment on July 31, 2000.

## II. ANALYSIS

### A. <u>Motion to Strike</u>.

As an initial matter, the Court addresses Defendant's motion to strike the unsworn declarations submitted in support of Plaintiff's statement of material facts (Doc. 57). In support of his Statement of Material Facts (Doc. 55), Plaintiff submitted the unsworn declarations of Cindy Diggs, Clint Jackson, and Dennis Starr pursuant to 28 U.S.C. § 1746.[3] (*See* Exhibits 2, 3, and 6 to Plaintiff's statement of material facts). Defendant argues that these declarations should be stricken because they do not demonstrate that they are based on personal knowledge of the declarants, and Plaintiff has shown neither that the declarants are competent to testify nor that the statements contained therein would be admissible at trial. (*See* Doc. 57). Plaintiff opposes Defendant's motion (*see* Doc. 60), arguing that these declarations have the same force and effect as affidavits.

Pursuant to Federal Rule of Civil Procedure 56(e), "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The

---

[3] 28 U.S.C. § 1746 provides that, "[w]henever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration . . . in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form . . . ."

6

Court has examined the declarations submitted by Plaintiff and finds that they satisfy the requirements of Rule 56(e) and 28 U.S.C. § 1746. Accordingly, Defendant's motion to strike (Doc. 57) is denied.

### B.   Motion for Summary Judgment.

The Court next considers Defendant's motion for summary judgment (Doc. 49). Under the well-settled standard, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Cox v. Acme Health Servs., Inc.*, 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the nonmovant, a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that there exists no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets this burden, the nonmovant must set forth specific facts that demonstrate the existence of a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. As the Supreme Court stated in *Anderson*, "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 250. Weighing evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. *Anderson*, 477 U.S.

7

at 255.

In the second amended complaint (Doc. 27), Plaintiff alleges employment discrimination on the basis of actual and perceived disability under the Americans with Disabilities Act, on the basis of age under the Age Discrimination in Employment Act, and for retaliation in violation of Title VII of the Civil Rights Act of 1964.[4]   At this stage, there are only three claims currently pending before the Court:  a claim for discrimination under the ADA, a claim for harassment under the ADA, and a claim for constructive discharge.  Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's remaining claims because Plaintiff cannot establish that he was qualified for the positions for which he applied, because he cannot make a *prima facie* case showing that he was harassed because of an alleged disability, because Plaintiff failed to avail himself of procedures available to address his complaints of harassment and discrimination, and because Plaintiff cannot prove he was constructively discharged.

## 1.    **ADA Discrimination**.

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability" with regard to such matters as hiring, advancement, and discharge.  42 U.S.C. § 12112(a).   Because Plaintiff's ADA claim is based on circumstantial evidence rather than direct evidence,[5] the Court examines Plaintiff's evidence within the burden

---

[4]  In his memorandum in opposition to Defendant's motion for summary judgment (Doc. 51), Plaintiff concedes dismissal of his claims under the Age Discrimination in Employment Act and for retaliation under the ADA.  Thus, those claims were dismissed with prejudice on the record at the September 25, 2000, hearing.

[5]  Although it is not entirely clear whether Plaintiff is also proceeding under a direct method of proof, the Court finds that there is simply no evidence that Defendant acknowledged at any point that discriminatory intent was behind its treatment of Plaintiff, and therefore, the Court finds that he could not succeed under this method of proof.

8

shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

*See also Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 792 (7th Cir. 1997).  Under this analysis, Plaintiff

must establish a *prima facie* case for discrimination under the ADA by showing that (1) he is a

disabled person within the meaning of the ADA, (2) that he is qualified to perform the essential

functions of his job either with or without a reasonable accommodation, and (3) that he suffered an

adverse employment action under circumstances that "indicate that it is more likely than not that

[his] disability was the reason for these adverse actions." *Leffel*, 113 F.3d at 792-94.  Once a plaintiff

has established a *prima facie* case of discrimination, the burden shifts to the employer to prove a

non-discriminatory, legitimate reason for the adverse employment action.  *McDonnell Douglas*

*Corp.*, 411 U.S. at 802; *see also Rice v. Genova Prods., Inc.*, 978 F. Supp. 813, 818 (N.D. Ind. 1997)

*(quoting DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797-98 (7th Cir. 1995)).  The plaintiff must then

show that the proffered reason is pretextual.  *Id.* at 802.

### a.   "Disability."

In a footnote to its memorandum of law in support of its motion for summary judgment,

Defendant argues that Plaintiff has failed to show that he is disabled within the meaning of the ADA.

The Court finds that this issue deserves considerable attention, and therefore, addresses it first.

The ADA defines a "disability" as follows:

A.   A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

B.   A record of such impairment; or

C.   Being regarded as having such an impairment.

42 U.S.C. § 12102(2).  The EEOC regulations define "major life activities" to mean "functions such

9

as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). The major life activity must be more than just limited – it must be substantially limited, meaning "that the person is either unable to perform a major life function or is 'significantly restricted as to the condition, manner or duration' under which the individual can perform a particular major life function, as compared to the average person in the general population." *Weiler v. Household Fin.Corp.*, 101 F.3d 519, 523 (7th Cir. 1996) (*quoting* 29 C.F.R. at 1630.2(j)).

Here, Plaintiff contends that he falls under the "regarded as" definition of disability in that Defendant regarded him as having an impairment that substantially limits one or more of his major life activities. Plaintiff does not argue that his physical impairment substantially limits any of his major life activities (such as working), and he concedes that Defendant did not regard him as having a disability which would prohibit him from working at the Correctional Center. Instead, Plaintiff argues that he meets the third prong of the test for disability because Defendant "did not want someone it regarded as having a disability to occupy a full time position of instructor on campus." (Doc. 51 at p. 1).

To have regarded Mocaby as disabled, however, Kaskaskia College must have regarded him as disabled from employment generally. *See, e.g., Sutton v. United Airlines, Inc.*, 527 U.S. 471, 491 (1999); *Skorup v. Modern Door Corp.*, 153 F.3d 512, 515 (7th Cir. 1998); *Marschand v. Norfolk and Western Ry. Co.*, 876 F. Supp. 1528, 1540-41 (N.D. Ind. 1995). It is well-established that an "employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job." *Byrne v. Board of Education, School of West Allis-West Milwaukee*, 979 F.2d 560, 567 (7th Cir. 1992) *(quoting Forrissi v. Bowen,*

10

794 F.2d 931, 933-34 (4th Cir. 1986)); *see also Sinkler v. Midwest Property Management Ltd.*
*Partnership*, 209 F.3d 678 (7th Cir. 2000).

On this issue the Court finds the case of *Patterson v. Chicago Association for Retarded*
*Citizens*, 150 F.3d 719 (7th Cir. 1998), controlling.  In *Patterson*, the plaintiff was a teacher at a
special education school.  After she was dismissed from her job for exhibiting "inappropriate
behavior," Patterson sued her employer claiming she was discharged in violation of the ADA.
Patterson suffered from paranoia, which she argued rendered her disabled under the ADA.  Yet the
Seventh Circuit affirmed the district court's entry of summary judgment on the basis that Patterson
was not disabled because "[t]he evidence in the record demonstrated only that Patterson was
significantly restricted in the ability to perform one specific area of classroom instruction: that is, she
was found to be incapable of instructing and vigilantly monitoring a group of severely retarded
children. . . ."  150 F.3d at 725-26.  The Court stressed that "to be 'substantially limited' for the
purpose of working, an individual must be 'significantly restricted in the ability to perform either a
class of jobs or a broad range of jobs in various classes . . . .'"  *Id.* at 725 (*quoting* 29 C.F.R. §
1630.2(j)(3)(i).  Patterson's claim was rejected because she could not show that her impairment
"render[ed] her incapable of performing any teaching job, not just a specific sort of teaching job."
150 F.3d at 725.

Much like in *Patterson*, the record before this Court contains no evidence that Kaskaskia
College regarded Mocaby as incapable of performing any teaching position or disabled from
employment generally.  To the contrary, the undisputed evidence before the Court shows that
Kaskaskia College found Mocaby to be capable of satisfying several teaching positions.  Plaintiff
argues that he can make a *prima facia* case under the ADA because Defendant refused to employ

11

him in an on-campus position. Again, however, the evidence only shows that Defendant refused to hire Plaintiff for particular positions which, as will be discussed below, the Court finds that the undisputed evidence shows Plaintiff was unqualified to fill. There is simply no evidence that Kaskaskia College regarded Mocaby as disabled from teaching generally.

### b.   "Qualified."

The Court is mindful that in *Patterson* the Seventh Circuit refused to even consider the merits of the plaintiff's argument that she was qualified because it had determined that she was not disabled within the meaning of the ADA. *See Patterson*, 150 F.3d at 726. Because the Court finds that Mocaby is not disabled and, therefore, fails to satisfy the first prong of the *prima facie* case, consideration of this prong is not necessary. Nonetheless, because the parties focus primarily on this point in their briefs, the Court will address it on the merits.

There are three positions which Plaintiff claims that he was unlawfully denied: the position of mathematics overload instructor at the Centralia Correctional Center, the on-campus welding instructor position, and the on-campus industrial technology instructor position. Defendant argues that for each of these three positions, Plaintiff cannot show that he was qualified. Having reviewed all of the evidence in the record, the Court agrees with Defendant.

First, Plaintiff's transcript reflects a weak background in mathematics. (*See* Exhibit 24 to Defendant's motion for summary judgment). Plaintiff acknowledged in his deposition transcript that he would "never in a million years" apply for a job in a university setting as a mathematics instructor *(see* Exhibit 5 to Defendant's motion for summary judgment at p. 75), and he admitted that his qualifications to teach mathematics were slim. *Id.* Similarly, as to the on-campus welding position, it is undisputed that Mocaby did not have the required AWS certification for the position. Plaintiff

12

cannot dispute that an employer is entitled to select the qualifications for a particular job. *See Leisen v. City of Shelbyville*, 153 F.3d 805, 808 (7th Cir. 1998) (*citing Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 676-78 (7th Cir. 1998) and *Webster v. Methodist Occupational Health Ctrs., Inc.*, 141 F.3d 1236, 1238 (7th Cir. 1998)). Here, Kaskaskia College determined that this certification was necessary for the position, and Plaintiff did not hold the certification.

Finally, the Court agrees with Defendant that there is no evidence in the record that Plaintiff even applied for the on-campus position as an electronics instructor. During the hearing on this matter, counsel for Plaintiff attempted to dispute this fatal fact by arguing that Mocaby did not apply because Dean Rehberg told him he was going to get a welding position. Nonetheless, because it is undisputed that he never applied for the position, Plaintiff cannot state a *prima facie* case of discrimination under the ADA. *See Weiler*, 101 F.3d at 526.

Because Plaintiff fails to meet the first two prongs of a *prima facie* case of ADA discrimination, the Court need not consider whether Plaintiff suffered an adverse employment action,[6] whether Kaskaskia College has proven a non-discriminatory, legitimate reason for the adverse action, or whether Kaskaskia College's proffered reason is pretextual. His claim fails, and accordingly, it is hereby dismissed with prejudice.

### 2.    **ADA Harassment**.

Next, Defendant argues that it is entitled to summary judgment on Plaintiff's claim that he

---

[6] As Judge Posner recently stated, "[t]he idea behind requiring proof of an adverse employment action is simply that a statute which forbids employment discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." *Hunt v. City of Markham, Illinois*, 219 F.3d 649, 653 (7th Cir. 2000). The Court has some reservation whether the failure to transfer Plaintiff to a lateral teaching position at a different facility even constitutes "adverse employment action," but this point need not be reached.

13

was subjected to a hostile environment. Specifically, Defendant argues that Plaintiff's allegations of harassment do not rise to the level of disability harassment actionable under the ADA. Moreover, and most importantly for purposes of the motion for summary judgment, Defendant argues that the majority of the comments which Plaintiff claims were discriminatory were made more than 300 days prior to the filing of the EEOC charge. Defendant argues that under *DeClue v. Central Illinois Light Company*, 223 F.3d 434 (7th Cir. 2000), Plaintiff's claims are barred by the statute of limitations. As in *DeClue*, Mocaby invokes the "continuing violation doctrine."

In *DeClue*, Judge Posner rejected the plaintiff's argument that the acts were a continuing violation and thus not barred by the statute of limitations, noting that the continuing violation doctrine "comes into play in a sexual-harassment case only when the plaintiff was reasonable not to perceive her working conditions as intolerable until the acts of harassment had, through repetition or cumulation, reached the requisite level of severity." *Id.* at 435. Here, as in *DeClue*, the Court finds that the incidents which occurred within the 300 day period are simply "more of the same." The earlier incidents should have put Mocaby on notice and, therefore, the Court finds that he may no longer base a claim upon them.

The Court has, however, considered Mocaby's claim with respect to the incidents that fall within the statutory time frame. In considering this claim, the Court proceeds on the assumption that the Seventh Circuit would recognize a cause of action for hostile environment harassment under the ADA.[7] Assuming that it would recognize this claim under the proper factual scenario, the Seventh

---

[7] The Seventh Circuit noted in *Silk v. City of Chicago*, 194 F.3d 788, 803-804 (7th Cir. 1999), that such a claim has not been explicitly recognized in this Circuit. Nevertheless, Judge Ripple noted that the Seventh Circuit, like other Circuits, has assumed the existence of such a cause of action. *See also Conley v. Village of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000); *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996).

14

Circuit has stated that a plaintiff must follow the methodology set forth in sexual harassment cases and the trilogy of Title VII cases, *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). *Silk*, 194 F.3d at 804. Thus, Mocaby must show that his work environment was both subjectively and objectively hostile. *See Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998) (*citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). An objectively hostile environment is one that a reasonable person would find hostile or abusive. *Harris*, 510 U.S. at 21. Of course, not all verbal or physical harassment in the workplace is prohibited. Mocaby must show "that a rational trier of fact could find that his workplace [was] permeated with discriminatory conduct – intimidation, ridicule, insult – that [was] sufficiently severe or pervasive to alter the conditions of his employment." *Silk*, 194 F.3d at 804.

Again, the Court is limited to considering only the incidents that occurred within the statutory time frame, *see Filipovic v. K & R Express Systems*, 176 F.3d 390, 398 (7th Cir. 1999), and the only acts which fall within the 300 day period are as follows: a "cartoon" being placed in his mailbox by Program Director Mike Cremeens (*see* Exhibit 63 to Defendant's reply to Plaintiff's memorandum of law in opposition to Defendant's motion for summary judgment), two verbal comments made by Correctional Center employees (one by a Sergeant Freeman who allegedly grabbed his arm and in front of about ten inmates said, "[t]he only way this motherfucker could be handcuffed would be to use his good arm and one of his legs," and another by a Captain Gannon who told him, "I know how you lost your hand, Hook. You sat down on your beer bottle, and your hand got sucked up your ass"), and a comment by Tom Ballagh, an employee of the Centralia Correctional Center and former Kaskaskia College Board Member (who allegedly often called Mocaby "Captain Hook" and told

15

him that he was not wanted on campus because he was "Captain Hook").[8]  (*See* Exhibit 59 to Defendant's motion for summary judgment).

First, with respect to the cartoon, the Court is persuaded by Defendant's argument that it was not objectively or subjectively offensive because Mocaby even referred to himself as "Hook" on occasion.  (*See* Exhibits 29 and 30 to Defendant's motion for summary judgment).[9]  Moreover, Plaintiff admitted in his deposition that he never told anyone that he did not want to be called "Hook."  (See Exhibit 2 to Plaintiff's statement of material facts at p. 172).  The other statements, though reprehensible, appear to have been isolated.  And with respect to the statement by Ballagh, because he was not a member of the Board at the time the statement was made, the statement is not an admission which would bind Kaskaskia College.  Moreover, the Court agrees with Defendant that Plaintiff has failed to establish any logical connection between the alleged comments and the employment decisions which Plaintiff claims were discriminatory.

Having considered all of this evidence in a light most favorable to Mocaby, the Court finds that the frequency, severity, and nature of these comments is not sufficient to trigger Kaskaskia College's liability.  Such comments, made only a couple of times and apparently not contemporaneously objected to by Mocaby, do not in this Court's mind create an objectively hostile

_____

[8] Plaintiff filed his charge of discrimination on October 23, 1998.  Thus, the Court considers only conduct which occurred after December 26, 1997, to fall within the statutory time frame.

[9] The Court notes that Defendant asserts that Plaintiff admitted that the supervisor who put the cartoon in his mailbox was not "disposed to using that term [Hook] too much" citing to pages 72, 154, and 172 of Plaintiff's deposition.  Unfortunately, however, those pages are not included in the excerpts from the deposition attached as Exhibit 5 to Defendant's motion for summary judgment.  Page 172 was included in the excerpts attached as Plaintiff's Exhibit 2, and accordingly, only that page has been considered with respect to this point.

working environment.  Moreover, the Court does not find that Mocaby was reasonable to perceive these comments as abusive, if he in fact did.

Plaintiff relies heavily on *Wilson v. Chrysler Corporation*, 172 F.3d 500, 508 (7th Cir. 1999), in support of his claim that he was subjected to a hostile working environment.  *Wilson* is, however, in the Court's mind very different from the facts presented here.  In *Wilson*, the plaintiff worked on the assembly line at one of Chrysler's manufacturing plants.  The facts surrounding her claim were "largely in dispute," but included evidence that (1) she had complained to her union steward about being removed from the paint line because (she was told), "her breasts were leaving 'titty prints' in the paint," yet the steward did nothing (*id.* at 507); (2) that over the course of eight years she was subjected to repeated touching, verbal abuse, and display of offensive objects, cartoons, and pictures (*id.*); and (3) at least twice a week fake penises, constructed from a rubber sealant used at the plant, were sent down the assembly line to her work station.  *Id.*  At least three times a fake penis was left in her work area.  *Id.*  But Wilson, unlike Mocaby, repeatedly pleaded with her coworkers to stop these harassing acts.  And there were other, arguably worse acts (like a male co-worker, in the presence of several other employees, "brandish[ing] a fake penis between his legs and yell[ing] at Wilson: 'Look what I got for you; bet you can't handle this'") which again were reported, but no action was taken.  *See id.*

The district court in *Wilson* concluded that she had complained too late and that there was not sufficient evidence that Chrysler knew of the co-worker harassment to impose liability.  The Seventh Circuit disagreed, finding that a reasonable jury might conclude that some of the misconduct was reported to Chrysler and that it was possible Chrysler had constructive notice of the harassment because "virtually all of the disparate acts of harassment of which Wilson complains took place on

17

the floor of the assembly plant which, by design, is a peculiarly communal employment forum. The cartoons and fake penises were displayed in common areas or placed in open view at Wilson's work station." *Id.* at 509. To the contrary, there is no evidence in the record before this Court that Mocaby told anyone to stop the alleged harassment or that he followed formal procedures to end it. Likewise, the comments and placement of the cartoon in his mailbox is very distinguishable from the facts in *Wilson*.

Of course, the Court is mindful that the cartoon was placed in Mocaby's locker by Michael Creemens, his supervisor, and, therefore, a different set of rules applies to this alleged harassment. As the Seventh Circuit stated in *Silk*, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." 194 F.3d at 805. If this action had culminated in a tangible employment action, then Kaskaskia College has no affirmative defenses available to escape liability. Because the Court finds, however, that Plaintiff has failed to causally link the placement of this cartoon in his locker to any employment action which he claims was adverse, Kaskaskia College has an affirmative defense available. FED. R. CIV. P. 8(c); *See* amended answer to complaint and second amended complaint (Doc. 45). To that end, Kaskaskia College has pleaded that it "exercised reasonable care to prevent and correct promptly any harassing behavior for which Plaintiff claims he was subjected to; and Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by [Kaskaskia College] or to avoid harm otherwise." (*See* Doc. 45).

Again, the Court agrees with Kaskaskia College on this point. Kaskaskia College's affirmative defense is framed precisely in terms of the two necessary elements outlined by the

Seventh Circuit in *Silk*: "(a) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Silk*, 194 F.3d at 805. Kaskaskia College has provided the Court with the Centralia Correctional Center policy with respect to Discrimination and Harassment. *(See* Exhibit 26 to Defendant's motion for summary judgment). This policy prohibits "any form of unlawful discrimination and harassment." *Id.* It is undisputed that persons employed at the Correctional Center were required to comply with this policy, *(see* Exhibit 2 to Defendant's motion for summary judgment), and Defendant has produced documentation showing that Mocaby acknowledged receipt of the policy and agreed to "comply fully with all requirements contained therein" on March 10, 1997 *(see* Exhibit 27 to Defendant's motion for summary judgment). Moreover, "[w]hile proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." *Silk*, 194 F.3d at 805.

In this case, Mocaby was assigned to the Centralia Correctional Center, and that facility had an unequivocal policy against harassment with a detailed complaint procedure. (*See* Exhibit 26). Unfortunately, however, the undisputed evidence before the Court demonstrates that Mocaby failed to utilize this procedure to stop the alleged harassment. And it is well-settled that an employer's demonstration of the employee's failure to use the complaint procedure "will normally suffice to satisfy the employer's burden under the second element of the defense." *Silk*, 194 F.3d at 805. Thus, Kaskaskia College cannot be held liable for this conduct by Creemens. Finally, to the extent that

Mocaby's claim for constructive discharge relates to this claim for hostile working environment harassment, the Court further finds that Mocaby has not shown "discriminatory conduct which is so severe or pervasive that it creates an abusive working environment." *Silk*, 194 F.3d at 805.

### 3.   <u>Constructive Discharge</u>.

Plaintiff's final claim is that he was constructively discharged.  Constructive discharge refers to "the situation in which an employer, without firing an employee, makes his working conditions so miserable that it drives him to quit." *Hunt*, 219 F.3d at 655.   Mocaby's main argument in support of his claim for constructive discharge is that "Defendant relegated him to the position of instructor of custodial maintenance at the correctional center . . . refus[ed] to provide him with a lab where he could teach his students . . . [and] left him in a storage closet." (*See* Doc. 51 at p. 16).   In his deposition, however, Plaintiff admitted that it was his idea that he move his class into that room. *(See* Exhibit 5 to Defendant's motion for summary judgment at p. 182).  Again, even if Plaintiff is now claiming that he did not want to hold class in that room, there is no evidence in the record that he took any steps to resolve this problem with Kaskaskia College prior to ending his employment.

Moreover, the Court notes that Mocaby worked for Kaskaskia College from December 1981, until May 1999, almost eight years.   Although he claims that he was subjected to harassing comments and discrimination since approximately 1985, the undisputed evidence before the Court shows that Mocaby never told the alleged harassers to stop calling him "Hook," nor did he ever report the harassment.  Even considering every alleged discriminatory comment, the evidence simply does not support a finding that conditions became so bad that Mocaby was constructively discharged.

In further support of his claim, Mocaby states in his charge of discrimination that his supervisors ignored him and gave him "dirty looks" after he filed the first charge of discrimination.

(*See* Exhibit 4 to Plaintiff's statement of material facts).  Yet this is the only thing that allegedly

occurred close in time to his decision to end his employment; there is nothing in the record from

which a reasonable jury could conclude that the conditions gradually became so bad that Mocaby

was out of options.  In light of all the facts in the record, the Court simply cannot find that the

conditions were so miserable that he was left with no alternative but to resign.  As such, his claim

for constructive discharge also fails.

### III.  CONCLUSION

For the foregoing reasons, Defendant's motion to strike (Doc. 57) is **DENIED**.  Defendant's

motion for summary judgment (Doc. 49) is **GRANTED**.  This action is hereby **DISMISSED with

prejudice**.  The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED this 6th day of October, 2000.


G. PATRICK MURPHY
Chief United States District Judge